IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.  5:20-CR-50029-001 |
| | ) | |
| SIMON SAW-TEONG ANG | ) | |
| aka HONG SIZHONG | ) | |
| | ) | |

## <u>UNITED STATES' OMNIBUS MOTION IN LIMINE</u>

The United States of America, by and through undersigned counsel, hereby files this omnibus motion *in limine*: (1) to prohibit the Defendant, Simon Saw-Teong Ang ("Defendant"), from introducing his own statements through other witnesses or eliciting them on cross examination of government witnesses; (2) to prohibit reference to the government's failure to call equally available witnesses; (3) to exclude references to or evidence of bad character and conduct of government witnesses, apart from evidence offered to show untruthfulness; (4) to exclude evidence of the Defendant's general good conduct and character; (5) to exclude at trial any claim, questioning, or argument of selective prosecution including evidence or arguments related to FBI and DOJ initiatives; (6) to exclude testimony of undisclosed expert witnesses and any expert witnesses for which the Defendant does not disclose witness summaries for; (7) to exclude references to the constitutionality of the Wolf Amendment or China Restriction; and (8) to preclude the Defendant from offering improper defenses, and irrelevant and unfairly prejudicial arguments, during any phase of the trial, including jury selection, opening statements, examination of witnesses (including the Defendant, if he elects to testify), and closing arguments.

## FACTUAL AND PROCEDURAL SUMMARY

On July 28, 2021, a federal grand jury returned a Superseding Indictment charging the Defendant with fifty-five counts of wire fraud in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, two counts of passport fraud in violation of 18 U.S.C. § 1542, and two counts of making false statements in violation of 18 U.S.C. § 1001(a)(2).  (SS Indictment, Doc. 34).  The charges stem from the Defendant's former employment at the University of Arkansas as an engineering professor and director of the High Density Electronics Center (HiDEC) on campus at the University of Arkansas.  The Superseding Indictment alleges that the Defendant, in his capacity as a professor and director, submitted documents to the University of Arkansas with materially false omissions and statements.  These documents consisted of conflict of interest forms and outside employment forms.  In the same years in which the Defendant sent forms to the University of Arkansas stating that he either had no conflicts of interest to declare or that he had no outside employment to declare, the Defendant also applied for grants from NASA and the United States Air Force.  The Superseding Indictment alleges that the Defendant applied for these grants as a part of a scheme to defraud the United States Government Agencies (NASA and Air Force), the University of Arkansas, and others.  These grants are a part of the Defendant's scheme to defraud because he was not eligible to apply or receive the grants due to his conflicts of interest with China and his undisclosed outside employment with companies in China.  the Defendant benefited financially from both grants because they paid a portion of his salary at the University of Arkansas. In addition to defrauding NASA and the United States Air Force, the Defendant also defrauded the others who also applied for grants from NASA at the same time as the Defendant, as the Defendant's fraudulent proposal was selected instead of their legitimate proposals.

The Superseding Indictment also alleges that the Defendant committed two counts of making false statements on a passport renewal application.  Count Fifty-Six alleges that the Defendant falsely reported to the State Department that he was not known by any names other than "Simon Saw-Teong Ang," which he knew to be false, as he also known by his Chinese name, "Hong Sizhong."  Count Fifty-Seven alleges that the Defendant listed his immediate travel plans as a trip to Singapore with a departure date of August 30, 2019 on his expedited passport renewal application, which he also knew to be false, as he used his expedited passport to travel instead to China.

Count Fifty-Eight of the Superseding Indictment alleges that the Defendant made a materially false statement to the FBI when he told them in a recorded interview on May 8, 2020, regarding numerous patents in his name in China that "Yeah, I am not the inventor, I don't even know what that is."  The Defendant made this statement knowing then and there that he was, in fact, listed as the inventor of numerous patents in China.

Finally, Count Fifty-Nine of the Superseding Indictment alleges that the Defendant made a materially false statement to the FBI in the same recorded interview when he told representatives from a solar panel company working at the HiDEC that a competing solar panel company from China was also doing research at the HiDEC.  Specifically, the Defendant stated "When they (meaning the company representatives from China) were  here (meaning, present at the HiDEC in the United States), I introduced them (meaning the representatives from both the American company and the Chinese company).  The Defendant knew then and there that this statement was false, as the Defendant never introduced the representatives from the American company to the representatives from the Chinese company.  In fact, the representatives from the American

3

company had no idea that a competing company from China was working on the same technology in the same laboratory as their company.

## MOTIONS IN LIMINE

**I.**    **Motion to Prohibit Defendant from Eliciting His Own Out-of-Court Statements through Other Witnesses**

The United States respectfully moves the Court for an order precluding the Defendant from eliciting his own out-of-court statements through other witnesses.

### A.    The Defendant's Self-Serving, Out-of-Court Statements Are Hearsay

The Defendant has made numerous statements to potential witnesses about the circumstances of the crimes charged in the Superseding Indictment, both contemporaneously with his scheme to defraud and during the government's subsequent investigation.   While the government may introduce portions of these statements at trial as party opponent admissions under Federal Rule of Evidence 801(d)(2), it is well-established that the Defendant may not use other witnesses to offer his own self-serving out-of-court statements into evidence.   When offered by the declarant, such statements constitute inadmissible hearsay because they are offered by, not against, the party to whom the statement is attributable.  Fed. R. Evid. 801(d)(2); *United States v. Heppner*, 519 F.3d 744, 751 (8th Cir. 2008) (a party's own statement is not hearsay where it is "offered against" the party); *United States v. Waters*, 194 F.3d 926, 930-31 (8th Cir. 1999) (While Rule 801(d)(2) allowed the government to introduce a defendant's statements, "[s]uch statements, when offered by the defendant, are hearsay . . . ."); *cf. Glaze v. Byrd*, 721 F.3d 528, 533 (8th Cir. 2013) (under Rule 801(d)(2)'s "offered against" requirement, a corrections officer's statement was admissible only against the officer who made the statement, not his co-defendant).

Under this rule, the Defendant may not introduce his own statements, either by eliciting them through a defense witness or by cross-examining a government witness.  *See, e.g., United*

*States v. Chard*, 115 F.3d 631, 635 (8th Cir. 1997) (defendant not allowed to elicit his own statements during cross examination of an FBI agent); *United States v. Ramirez-Perez*, 166 F.3d 1106, 1112 n.7 (11th Cir. 1999) (defendant not entitled to cross-examine agent about exculpatory portions of statement after the agent testified about inculpatory portions of the statement on direct examination).  In other words, Rule 801(d)(2) generally precludes the Defendant from putting his out-of-court statements before the jury.  "Indeed, if such statements were deemed admissible under Rule 801(d)(2), parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury."  *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).[1]

### B.    The Rule of Completeness Does Not Allow the Defendant to Introduce His Own Out-of-Court Statements

The Rule of Completeness provides a limited exception to this principle.  This common law doctrine is codified in Federal Rule of Evidence 106, which states that, "if a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction . . . of any other part . . . that in fairness ought to be considered at the same time."  Fed. R. Evid. 106.  As an initial matter, Rule 106 applies only to written or recorded statements, not witness testimony about their conversations with the Defendant.  *See, e.g.*, Fed. R. Evid. 106 (rule applies to a "writing or recorded statement"); *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 636 (8th Cir. 2007) ("The rule of completeness, however, applies to writings or recorded statements, not to conversations.").  Accordingly, if a government witness recounts statements made by the

---

[1] Relatedly, should the Defendant choose to testify at trial and subject himself to cross-examination, the Court should preclude him from introducing into evidence out-of-court statements that are hearsay if they do not satisfy an exception to the hearsay rule.

Defendant, he may not invoke Rule 106 to elicit additional statements made during the conversation.[2]

Even where Rule 106 applies, it does not give a defendant the unlimited right to introduce other portions of his recorded statements. Rather, the rule is a narrow exception designed "to avoid misleading impressions created by taking matters out of context" and "ensure fairness" in situations where correcting such misleading impressions can only be done by introducing the additional out-of-court statements. *United States v. Ramos-Caraballo*, 375 F.3d 797, 802-803 (8th Cir. 2004). "The rule 'permits nothing more than setting the context and clarifying the answers given on cross-examination.'" *Ahlberg*, 481 F.3d at 636 (quoting *Ramos–Caraballo*, 375 F.3d at 803); *see also United States v. King*, 351 F.3d 859, 866 (8th Cir. 2003) (Rule 106 did not permit the defendant to introduce additional portions of a recorded conversation where the defendant failed to show that excerpts introduced by the government "misled the jury or provided an incomplete or distorted view of the relationship and communications between [the defendant] and [a cooperator]."). Further, a defendant has the burden to specify the portion of the excluded statement "that is relevant to the issue at trial and that qualifies or explains portions already admitted." *United States v. Mohamed*, 727 F.3d 832, 837 (8th Cir. 2013). Accordingly, absent a showing that some additional portion of a written or recorded statement is necessary to correct a misleading impression, the Defendant's out-of-court statements remain inadmissible hearsay when offered by the Defendant.

---

[2] If the Defendant were permitted to offer his own statement through another witness, his credibility then may be challenged "by any evidence which would be admissible for those purposes if the declarant had testified as a witness." Fed. R. Evid. 806.

## II.     Motion To Prohibit Reference to Government's Failure To Call Equally Available Witnesses

The United States respectfully moves the Court for an order prohibiting the Defendant from referencing the government's failure to call witnesses who were equally available to both parties.

"Where witnesses are equally available to either party, no adverse inference may be drawn from the failure of one party to call them," *Illinois Cent R. Co. v. Staples*, 272 F.2d 829, 834 (8th Cir. 1959); *see also General Dynamics Corp. v. Selb Mf'g Co*., 481 F.2d 1204, 1217 (8th Cir. 1983); *Walker v. United States*, 489 F. 2d 714 (8th Cir. 1974); *United States v. Boston*, 194 F. App'x 890, 893 (11th Cir. 2006) ("An inference from a party's failure to call a witness equally available to both parties is impermissible."). In *Walker*, the Eighth Circuit affirmed the trial court's refusal to give an instruction about the prosecution's failure to produce a witness, reasoning that the government did not "possess[] the sole power to produce" the witness. *Id.* at 716. (citing E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 11.33 (1970) ("If it is peculiarly within the power of either the prosecution or the defense to produce a witness who could give material testimony on an issue in the case, failure to call that witness may give rise to an inference that his testimony would be unfavorable to that party. However, no such conclusion should be drawn by [the jury] with regard to a witness who is equally available to both parties . . . .")).

Since all of the witnesses in this case are available to both sides, commenting on the failure of the government to call any one of a number of witnesses would be improper on the part of the Defendant and should not be permitted.

### III.     Motion To Exclude Bad Character Evidence of the Government's Witnesses

The United States respectfully moves the Court for an order precluding (a) any reference to a government witness's bad character or prior bad acts, unless it pertains to a witness's character for truthfulness; and (b) any extrinsic evidence of prior bad acts relevant to truthfulness.

#### A.     Unless Germane to Truthfulness, Character Evidence Relating to a Government's Witness Is Inadmissible

Rule 404(a)(3) provides the only conduit for attacking the character of a witness to prove conformity with a negative trait.  Fed. R. Evid. 404(a)(3).  It constitutes an exception to the general ban on character evidence and provides that Rules 607, 608, and 609 govern such impeachment evidence.  *Id.*  Rule 608, in turn, authorizes the use of character evidence to support or attack a witness's "character for truthfulness or untruthfulness."  Fed. R. Evid. 608(a), (b).  It does not allow for any kind of character attack other than that pertaining to veracity.  *See United States v. Alston*, 626 F.3d 397, 403-05 (8th Cir. 2010) (affirming trial court's decision that evidence of a government witness's job termination was not admissible under Rule 608(b) because it was not probative of truthfulness).  The Court should therefore preclude the Defendant from introducing any evidence, or making any reference to, prior bad acts unrelated to a government witness's character for truthfulness, whether on cross-examination or otherwise.  This includes evidence of any law enforcement witness's disciplinary record, job performance, or alleged personal misconduct.

#### B.     The Defendant May Not Introduce Extrinsic Evidence to Prove Bad Acts Relevant to Truthfulness

The Court should bar the Defendant from introducing extrinsic evidence to show the purported untruthfulness of a government witness.  Under Rule 608(b), specific instances of a witness's conduct relevant to the witness's character for truthfulness may be explored on cross-

examination.  Fed. R. Evid. 608(b).  However, aside from a witness' criminal history, which is governed by Rule 609, parties are not permitted to introduce extrinsic evidence to prove specific instances of a witness' bad conduct.  Accordingly, if a defendant wishes to cross-examine a government witness about specific instances of conduct bearing on the truthfulness of the witness, he may do so, but he is stuck with the answers he receives.  *See United States v. Grandison*, 781 F.3d 987, 992 (8th Cir. 2015) (citing *United States v. Martz*, 964 F.2d 787, 789 (8th Cir.1992) (affirming decision to bar introduction of a government cooperator's old plea documents to counter his denials on cross-examination because the documents would lead to "the type of mini-trial over a collateral matter that Rule 608(b) forbids")).  The Defendant therefore may not call other witnesses[3] or introduce physical or documentary items to prove allegedly untruthful conduct of a government witness.

Furthermore, while Rule 608(b) permits a party to inquire about a witness' dishonest acts leading to punishment or sanction, courts have often precluded defendants from cross-examining government witnesses about the disciplinary findings and determinations resulting from those acts because such testimony would amount to extrinsic evidence and hearsay.  *See, e.g., United States v. Johnson*, 968 F.2d 765, 766-67 (8th Cir. 1992) (affirming trial court's refusal to allow cross-examination about a police officer's suspension for lying or the introduction of the suspension letter because evidence of the internal investigation and outcome were collateral under Rule 608(b)); *United States v. Davis*, 183 F.3d 231, 257 (3d Cir.) amended, 197 F.3d 662 (3d Cir. 1999) (holding evidence of internal affairs finding was both extrinsic evidence and hearsay); but see *United States v. Dawson*, 434 F.3d 956, 958 (7th Cir. 2006) (holding that judicial credibility

---

[3] If the Defendant calls a witness for the purpose of attacking a government witness's character for truthfulness on direct examination, they may only elicit evidence in the form of reputation or opinion testimony.  Fed. R. Evid. 608(a).

findings were not extrinsic evidence under Rule 608(b), but not addressing whether such findings were hearsay).   Accordingly, the Court should preclude the Defendant from introducing or referencing disciplinary records, disciplinary history, or other extrinsic evidence of bad acts by government witnesses, even where the underlying bad acts are relevant to truthfulness.

## IV.   Motion to Exclude Evidence of the Defendants' Good Character or Conduct

The United States respectfully asks the Court to exclude evidence of, or reference to, the Defendant's general good character and specific instances of good conduct, including any awards, commendations, recognition, or good acts towards friends or family members.   Such evidence would constitute improper character evidence under Federal Rules of Evidence 404 and 405.

### A.   Evidence of the Defendant's General Good Character is Inadmissible Under Rule 404(a)

The character evidence rules, Rules 404(a) and 405, prohibit the Defendant from introducing evidence or presenting argument regarding specific instances of his good character, including evidence of awards, honors, or positive contributions he may have made in the past. Although Rule 404(a) generally permits a defendant to introduce evidence that relates to a pertinent character trait, the type of character evidence that a defendant may introduce is greatly limited by Rule 405.   According to Rule 405, in cases where evidence of a defendant's pertinent trait is admissible, "it may be proved by testimony about a person's reputation or by testimony in the form of an opinion."   Fed. R. Evid. 405(a).   While the United States may cross examine a defendant's reputation or opinion witness regarding specific instances of a defendant's conduct, a defendant may not introduce character evidence by way of specific instances of conduct except in the rare case where the character trait itself is an element of the offense that must be established – a circumstance which does not apply here.   *United States v. Silber*, 456 F. App'x 559, 562 (6th Cir. 2012).

In *Silber*, for example, the Sixth Circuit affirmed the district court's exclusion evidence regarding specific instances of the defendant's good character. *Id*. At trial, the defendant, charged with defrauding Medicare, attempted to establish his good character by showing that he had not received Medicare overbilling notices in prior jobs. *Id*. at 560. Agreeing with the district court, the Sixth Circuit explained that allowing such good character evidence would have violated Rule 405's prohibition against the introduction of specific instances of conduct by a defendant. *Id.; see also United States v. Crockett*, 586 F. Supp. 2d 877, 884 (E.D. Mich. 2008) (granting motion in limine to prevent the defendant from "offering specific instances of good conduct"). The Eighth Circuit has also held that character evidence should be limited to the reputation of the defendant, not to specific instances of behavior. *United States v. Koessel*, 706 F.2d 271, 275 (8th Cir. 1983) (finding no error in trial court's refusal to allow appellant's parole officer to testify as to his good behavior on parole.)

That same rationale has led numerous courts to conclude that a defendant cannot introduce evidence of specific instances of good character, such as honors, commendations, or prior community service. One such example is the D.C. Circuit's decision in *United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997) (per curiam). The defendant in that case was a former police officer who became involved in a drug conspiracy. *Id.* at 990-91. The defendant sought to introduce evidence regarding commendations he had received for his good police work. *Id*. Affirming the district court's exclusion of that evidence, the D.C. Circuit held that the "commendations were not admissible under" either Rule 404(a) or Rule 405. *Id.*

Another example is *United States v. Melton*, 2008 WL 4829893 (S.D. Miss. Nov. 4, 2008). In that case, the defendants were former police officers who faced civil rights and firearms charges. *Id. at 1*. The United States moved in limine to preclude the defendants from introducing evidence

11

of specific instances of good character, such as awards and commendations they received in the past.  *Id.*  The district court granted the government's motion because the awards and commendations were unrelated to a pertinent character trait, and the specific instances of good character were inadmissible.  *Id.*  In reaching its decision, the *Melton* court highlighted that under Rule 405(a), "[p]roof of an accused's trait of character is generally limited to reputation or opinion evidence."  *Id. at 2*.  And the court further explained that "the Fifth Circuit Court of Appeals has squarely rejected the contention that lack of criminal intent may be demonstrated through specific acts evidence."  *Id.*

Many other courts have reached the same result in similar circumstances.  *See, e.g., United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (affirming district court's exclusion of specific instances of good character such as defendant's resume and commendations he received while serving as a police officer and member of the military); *United States v. Hill*, 40 F.3d 164, 168-69 (7th Cir. 1994) (agreeing with the district court that evidence showing that the defendant, a postal employee charged with stealing mail, had previously failed to steal three "test letters" was inadmissible for several reasons, including Rule 405(a)'s prohibition against the introduction of specific instances of good character); *United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) (concluding that the proffered testimony of a defense witness "was merely an attempt to portray [the defendant] as having good character through the use of prior 'good acts.'  The trial judge properly exercised his discretion in excluding this testimony as inadmissible character evidence.").

Here, as in the cases cited above, the Court should preclude the Defendant from introducing evidence or making arguments regarding specific instances of his good character, including evidence of awards, honors, or positive contributions he may have made in the past.  Allowing such evidence of specific instances of good character would run afoul of Rule 405(a).  Because

evidence of the Defendant's prior acts of good character is inadmissible, it would also be improper for the Defendant to discuss his good character, honors, accomplishments, or commendations during his opening statement or closing argument[4].

Accordingly, in light of the above principles of law, the Defendant should not be permitted to introduce evidence of his good character—other than opinion or reputation testimony about a pertinent character trait[5]— and specific acts of good conduct should be excluded or otherwise limited.

---

[4] If the Defendant wishes to introduce character evidence by way of reputation or opinion in compliance with Rule 405, the character evidence must relate to a "pertinent" character trait. Fed. R. Evid. 404(a). Given this requirement, evidence that the Defendant may have once had a reputation for such things as being an accomplished scientist, a good professor, a diligent worker, or a kind person would be inadmissible. That is so because character traits such as scientific knowledge, fairness, diligence, and kindness are not "pertinent" to the charges involved in this case. *See Nazzaro*, 889 F.2d at 1168 (holding that traits of "bravery, attention to duty, perhaps community spirit – were hardly 'pertinent' to the crimes [fraud and perjury] of which [the defendant] stood accused"); *see also United States v. Santana-Camacho*, 931 F.2d 966, 967-68 (1st Cir. 1991) (affirming exclusion of character evidence about the defendant being kind and a good family man because those character traits were not pertinent – i.e., they "would not make any fact of consequence to the determination of the case significantly more or less probable than it would be without evidence of the trait") (internal quotations and alterations omitted).

[5] Should the Defendant choose to do introduce such evidence, he opens the door to the government being able to rebut it, including through reference in cross-examination to prior specific instances of conduct inconsistent with the claimed character trait. Fed. R. Evid. 404(a)(1), 405(a).

## V.     Motion to Preclude at Trial any Claim, Questioning, or Argument of Selective Prosecution

The United States respectfully moves the Court to preclude the Defendant from claiming to the jury that he is a victim of selective prosecution.  Throughout the pretrial litigation in this case, the Defendant has made numerous unsupported statements suggesting that the government's prosecution of the Defendant is motivated by the Defendant's race and national origin.  Relatedly, during an in-chambers meeting on this case, the Defendant's attorney alleged that the government was motivated to pursue this case only because they were directed to do so under DOJ's so-called "China Initiative."[6]

The Court should preclude any claim, questioning, or argument relating to the government's motivation for prosecuting the Defendant, including any allegation of selective prosecution.  A claim of selective prosecution is an issue of law for the Court to decide and is not properly raised at trial before a jury.  Moreover, the Defendant has not attempted to satisfy the legal burden of demonstrating a selective prosecution claim, nor can he.

The Court should also preclude any claim, questioning, or argument relating to the "China Initiative," because any suggestion that the Defendant was prosecuted as a result of this initiative is simply another form of arguing selective prosecution, and should be excluded for the same reasons.  Reference to the China Initiative is also irrelevant to the elements of the charges in this case and unduly prejudicial, and should therefore be excluded under Rules 401, 402, and 403 as well.

---

[6] The Department of Justice's China Initiative reflects the strategic priority of countering national security threats posed by the People's Republic of China.

### A. A Claim of Selective Prosecution Is Not Properly Brought Before the Jury, But Is a Legal Issue for the Court to Decide

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Even if the Defendant was able to establish the elements of a selective prosecution claim, which he cannot (as explained below), any such evidence is within the exclusive province of the Court to decide, not the jury. *See, e.g., Armstrong*, 517 U.S. 456 at 464 ("A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."); *United States v. Abboud*, 438 F.3d 554, 579–580 (6th Cir. 2006) ("The defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury."). Accordingly, any allegation, questioning, or argument regarding the government's motivation in bringing this case should be precluded at trial.[7]

### B. The Defendant Has Not and Cannot Establish a Claim of Selective Prosecution

A selective prosecution claims rests on the principle that decisions to prosecute may not be "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (internal quotation marks and citation omitted). Nevertheless, "in the criminal-law field, a selective prosecution claim is a *rara avis* … The standard for proving it is particularly demanding, requiring a criminal defendant to introduce 'clear evidence' displacing the

---

[7] Notably, the Defendant has also forfeited his opportunity to raise such an argument before the Court. Under the Court's Third Amended Pretrial Scheduling Order, the Court "require[d] that any defense, objection or request capable of determination without trial of the general issue," including a claim of "selective or vindictive prosecution," be "raised by written motion filed not later than December 3, 2021." The Defendant never filed such a motion.

presumption that a prosecutor has acted lawfully." *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 489 (1999) (quoting *Armstrong*, 517 U.S. at 463 – 465). Indeed, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (internal quotation marks and citation omitted).

Accordingly, to establish a claim of selective prosecution, a defendant must meet a high bar: he must demonstrate both that the federal prosecutorial policy had a "discriminatory effect" and that it was motivated by a "discriminatory purpose." *Armstrong*, 517 U.S. at 465. To establish "discriminatory effect" based on race, a claimant is required to demonstrate that similarly situated individuals of a different race were not prosecuted. *United States v. Jones*, 399 F.3d 640, 645 (6th Cir. 2005). To establish "discriminatory purpose" based on race, a claimant must demonstrate that the prosecutorial policy was motivated by racial animus. *Id.; see also Wayte*, 470 U.S. at 610 (stating that "discriminatory purpose" implies the "decisionmaker … selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group" (internal quotation marks and citation omitted).

Here, the Defendant has not offered any facts supporting a possible claim of selective prosecution, nor can he. The Defendant has not sought to identify any similarly-situated individuals who have not been prosecuted for the same crimes with which he has been charged, nor has the Defendant offered any factual basis to find that the decision leading to his Indictment was motivated by unconstitutional animus.

**C.**   **The Court Should Preclude Any Reference to DOJ Initiatives at Trial Because such arguments are simply another form of Selective Prosecution Arguments and the Defendant Has Not and Cannot Establish Such a Claim.**

As noted, the government anticipates that the Defendant may also attempt to elicit testimony and make arguments before the jury that the government only sought to charge the Defendant because of the "China Initiative."  Any reference to the China Initiative, however, is merely another form of alleging selective prosecution: it is an argument, in other words, that the "China Initiative" constituted an improper purpose or motive for bringing the charges against the Defendant.  As discussed, however, a claim of selective or vindictive prosecution should be excluded from trial because it is a matter for the Court to decide, not the jury.

The Federal Rules of Evidence also require excluding such evidence.  In addition to the selective prosecution claim, these arguments should also be precluded under the Federal Rules of Evidence.  Under Rule 401, "evidence is relevant if it has any tendency to make a fact more or less probable that it would be without the evidence and if the fact is of consequence in determining that action."  And under Rule 402 "irrelevant evidence is not admissible."  Evidence regarding an FBI or DOJ initiative is simply not relevant to this case.  It has no tendency to make it more or less probable that the Defendant committed the elements of the offenses charged against him in the Superseding Indictment.

Moreover, any evidence, questioning, or argument related to the "China Initiative" would only serve to confuse the issues and mislead the jury.  Under Rule 403, a court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Any reference to the China Initiative creates

a substantial danger of misleading or confusing the jury into evaluating the proof in the case based on whether they agree or disagree with a DOJ policy.

For these reasons, the Court should preclude at trial any allegation, questioning, evidence, or argument regarding the government's motivation in bringing this case, including any reference to the China Initiative.

**VI.  Motion to Exclude the Testimony of Undisclosed Expert Witnesses and Expert Witnesses for which the Defendant has not provided Witness Summaries to the Government**

The United States respectfully moves the Court to exclude the testimony of undisclosed expert witnesses as well as expert witnesses for which the Defendant has not properly provided witness summaries pursuant to Fed. R. Crim. P. 16(b)(1)(C).

On October 5, 2021, the government filed a motion requesting the Court to enter an order directing the Defendant to disclose certain discovery, including the witness summaries of any expert witnesses the Defendant intends to call at trial.  (Doc. 48.)  The Court granted this motion on November 15, 2021.  (Doc. 52).  In the order, the Court noted that it "further "encourages" Mr. Ang to provide early disclosure of expert witness summaries as described in Federal Rules of Evidence 702, 703, and 705 and witness statements as per Federal Rule of Criminal Procedure 26.2(a) in order "to avoid any unnecessary delay in the trial of this case."  To date, the government has only received the names of two expert witnesses from the Defendant.  But the Defendant has failed to provide summaries of their opinions, bases for their opinions, and qualifications, pursuant to Rule 16(b)(1)(C).[8]  Moreover, counsel for the Defendant has indicated that the Defendant intends to retain more expert witnesses, but did not identify them by name or provide any

---

[8] See generally the United States' Motion to Exclude Testimony from Defendant's Expert Kraig Olejniczak and the United States' Motion to Exclude Testimony from Defendant's Expert David Zweig.

information about the subject matter of their testimony, let alone make disclosures pursuant to Rule 16.

As of the date of this filing, the jury trial in this matter is scheduled to begin in just thirty-five (35) days.  Disclosures of expert witnesses and witness summaries at this late date is unfairly prejudicial to the government as it makes its final preparations for trial.  Disclosures at this stage of the litigation could also cause undue delay, given that the government may choose to challenge such testimony under Rule 702 or potentially rebut such testimony with its own additional experts. Therefore, the government requests that the Court exclude any expert witnesses that the Defendant has not yet disclosed.

**VII.  The Court Should Preclude the Defendant from Making Arguments before the Jury that a NASA Funding Restriction Is Unconstitutional**

The United States respectfully moves the Court to preclude the Defendant from making arguments, questioning witnesses, or introducing evidence regarding the constitutionality of the Wolf Amendment or NASA's China Restriction.

The government anticipates that a portion of the Defendant's arguments or questioning at trial may be related to challenging the constitutionality of the Wolf Amendment, a funding bill passed by Congress in 2011.  Under the Wolf Amendment, NASA is generally prohibited from using appropriated funds "to develop, design, plan, promulgate, implement, or execute a bilateral policy, program, order, or contract of any kind to participate, collaborate, or coordinate bilaterally in any way with China or any Chinese-owned company."  Department of Defense and Full-Year Continuing Appropriations Act of 2011, Pub. L. No. 112-10, § 1340(a), 125 Stat. 38, 123; Consolidated and Further Continuing Appropriations Act of 2012, Pub. L. No. 112-55, § 539(a), 125 Stat. 552, 639.  As a result of the Wolf Amendment, NASA has incorporated language into its grants requiring applicants make assurances that the proposer "is not China or a Chinese-owned

company, and that the proposer will not coordinate bilaterally with China or any Chinese-owned company" – the so-called "China Restriction."  The China Restriction was one of the provisions of the NASA grant at issue in this case.

In 2011, the same year that the Wolf Amendment was enacted, the Office of Legal Counsel issued an opinion that certain language may be unconstitutional as applied: in particular, the opinion reasoned that the language of the funding restriction may unconstitutionally interfere with the executive branch's exclusive power to conduct diplomacy.[9]  The Wolf Amendment, however, remains the law.  And during all times relevant to the charges in the Superseding Indictment, the China Restriction has been included as a term of NASA's grant contracts.

In light of the Office of Legal Counsel opinion, the government anticipates that the Defendant may attempt to advance arguments at trial regarding whether the Wolf Amendment or China Restriction runs afoul of the United States Constitution.  The Court should preclude the Defendant from doing so for three reasons.

First, the alleged unconstitutionality of a particular law is a legal question and therefore not properly advanced before the jury.  Second, whether or not the Wolf Amendment is constitutional, language requiring a proposer to make assurances about his or her cooperation with China or Chinese-owned entities was included as a term of the grant at issue.  And it is the language of the grant that is relevant to the Defendant's alleged fraudulent representations or omissions.  Third, arguments regarding the constitutionality of the Wolf Amendment are likely to mislead the jury and confuse the issues, creating a danger that the jury will mistakenly assume that the China Restriction language in the NASA grants is invalid, just because of the Office of Legal Counsel's

---

[9] The Office of Legal Counsel opinion is publicly available at https://www.justice.gov/sites/default/files/opinions/attachments/2021/02/18/2011-09-19-ostp-china.pdf.

opinion about the Wolf Amendment and executive privilege.

Further, the government also anticipates that the Defendant may attempt to introduce evidence regarding internal NASA communications between NASA employees regarding the so-called "China Restriction." Such communications are not only inadmissible hearsay, but they are also substantially more prejudicial than probative on any issue that is before the jury.

The Court should also preclude the defendant's introduction of any such internal communications because they are inconsequential to whether the Defendant committed the offenses charged in the Superseding Indictment. For example, despite any internal communications to the contrary, the Wolf Amendment was signed into law every year that the government alleges that the Defendant developed and executed the scheme to defraud outlined in the Superseding Indictment. Second, the defendant is not even charged with a violation of the "China Restriction." The defendant is charged with a scheme to commit money and property fraud based on material misrepresentations and omissions he made to the University of Arkansas, NASA, and others. Any reference or argument that questions the validity of the "China Restriction" is simply not relevant to and is also substantially more prejudicial than probative regarding the crimes the Defendant is actually charged with committing.

In summary, because these arguments are legal arguments outside of the province of the jury and rely on inadmissible hearsay and evidence that is substantially more prejudicial than probative, the Court should preclude the defendant from advancing such arguments before the jury. Matters of law should not be argued or submitted to the jury, as they fall within the exclusive purview of the Court.

## VIII.   Motion to Preclude the Defendant from Offering Improper Defenses, and Irrelevant and Unfairly Prejudicial Arguments Which Invite Jury Nullifcation

Accordingly, the United States of America respectfully moves to exclude irrelevant and unfairly prejudicial evidence that invites jury nullification.  Specifically, the government respectfully moves the Court to preclude the Defendant from offering the following improper defenses, and irrelevant and unfairly prejudicial arguments, during any phase of the trial, including jury selection, opening statements, examination of witnesses (including the Defendant, if he elects to testify), and summation: (a) the defendant is the victim of an unjust government initiative; (b) the government sought to catch a spy and settled on fraud charges; and (c) the defendant faces imprisonment and has suffered other consequences.

### Jury Nullification Legal Standard

It is axiomatic that only relevant evidence is admissible at trial. Fed. R. Evid. 402.  And evidence is relevant only if it tends to make a fact of consequence more or less probable. Fed. R. Evid. 401.  Even when evidence is relevant, however, it may still be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time. Fed. R. Evid. 403.

Questions of relevancy and unfair prejudice under the Rules of Evidence often overlap with the issue of jury nullification.  *See, e.g., United States v. Mayer*, 2021 WL 2434121, at \*5 (D. Minn. June 15, 2021) (Arguments or evidence by *Mayer* encouraging jury nullification lack any relevance or probative value and are contrary to the instructions that this Court will provide to the jury.  Although the jury may reach a not-guilty verdict for any reason, *Mayer* has no right to present irrelevant evidence, confuse or mislead the jury, or encourage the jury to disregard the Court's instructions as to the law.); *United States v. Mayer*, 2021 WL 2434121, at 5 (D. Minn. June 15, 2021).  *See, also, United States v. Lucero*, 895 F. Supp. 1421, 1426 (D. Kan. 1995) ("Defendants

are not entitled to present evidence which is irrelevant for any purpose other than to provoke the finder of fact to disregard the law."); *United States v. Warwick*, 2017 WL 5027295, at *2 (D.N.M. Oct. 30, 2017) ("[B]ecause Defendant's belief regarding the law is irrelevant and because it would be introduced for the improper purpose of assisting jury nullification, it should be excluded under Federal Rule of Evidence 403 because its (non- existent) probative value is substantially outweighed by its unfair prejudicial value, it would be likely to confuse the issues, and it would be likely to mislead the jury."). "Jury nullification occurs when a jury ignores the evidence and the court's instructions on the law and acquits a criminal defendant whom the government has proven guilty beyond a reasonable doubt." *United States v. Mandell*, No. 12 CR 842, 2014 WL 287520 (N.D. Ill. Jan. 27, 2014) ("[J]ury nullification is 'a legitimate concern of prosecutors because acquittals cannot be appealed.'")(quoting *United States v. Mcknight*, 671 F.3d 664, 665 (7th Cir. 2012)).

It is improper to encourage jurors to disregard the law. *United States v. Wiley*, 503 F.2d 106, 107 (8th Cir. 1974). Courts of appeal are unanimous that, "[w]hile . . . a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath." *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir.1983); *see also United States v. Courtney*, 816 F.3d 681, 686 (10th Cir. 2016) ("[A] criminal defendant is not entitled to have the jury instructed that it can, despite finding the defendant guilty beyond a reasonable doubt, disregard the law."); *United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) ("[Jury nullification] is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent.");

Because the law is crystal clear that jury nullification arguments are improper and impermissible, courts regularly grant motions *in limine* prohibiting defendants from advancing

such arguments and introducing evidence intended to provoke the jury to disregard the law. *See, e.g., United States v. Thompson*, No. 99-41007, 2001 WL 498430, at 16 (5th Cir. Apr. 9, 2011) (unpublished) (affirming decision to grant motion *in limine* preventing jury nullification arguments because "the right to make closing argument does not include the right to have counsel make an improper argument"); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir.1993) ("[A] trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *United States v. Warwick*, No. 16-CR-4572 MCA, 2017 WL 5027295 (D.N.M., Oct. 30, 2017) (granting government's motion to preclude the defense from presenting evidence that the defendant believes that the Second Amendment supersedes 18 U.S.C. § 922(g), rendering the statute unconstitutional); *United States v. Reulet*, No. 14-40005- DDC, 2016 WL 126355, *5 (D. Kan. Jan. 11, 2016) (granting "the government's motion and prohibit[ing] defendants from presenting any irrelevant evidence intended to provoke the jury to disregard the law, or any evidence or argument urging jury nullification"); *United States v. Smith*, Crim. No. 08-00389-WS, 2009 WL 692149, at 4 n.3 (S.D. Ala. Mar. 13, 2009) (granting motion *in limine* and stating "[a]ny effort by [the defendant] at trial to encourage or solicit jury nullification would be improper"); *United States v. Schneider*, No. CR 07-10234-MLB, 2009 WL 10645219, at 1 (D. Kan. Jan. 28, 2009) (ruling that Defendants will not attempt to introduce jury nullification evidence or arguments).

### A.   The Court Should Preclude Defendant from Offering an Improper Defense that He Is the Victim of an Unjust Government Initiative

In this case, the Defendant should not be allowed to portray himself as a victim of the Department of Justice's China Initiative.  As discussed above, the China Initiative has no bearing whatsoever on Defendant's guilt or innocence.  Defendant's attempt to focus on the China Initiative would be an obvious distraction from the charges in this case and the issues before the

Court.  At trial, it would further waste time and confuse the issues. Moreover, any defense, argument, or suggestion, whether direct or indirect, that the jury should find Defendant not guilty because he was swept up in the China Initiative smacks of jury nullification, in addition to being irrelevant and substantially more prejudicial than probative, as noted above.  The Department of Justice's strategic priorities and the Defendant's views on that topic are not proper issues for the jury to consider.  Thus, the Court should prohibit Defendant from referencing the China Initiative by name or otherwise in his opening or at any other time during trial.

    **B.**    **The Court Should Preclude Defendant from Offering an Improper Defense that the Government Settled on Fraud Charges**

The government anticipates that, as a part of his defense, the Defendant may argue that he is not alleged to have committed any espionage crimes.  That is correct—he is charged with a money and property fraud scheme.  Any uncharged crimes are irrelevant, and the Court should prohibit Defendant from referencing them in any way, including by arguing or suggesting, whether directly or indirectly, that the jury should acquit him because he was not charged with, or there is no evidence to prove, other federal offenses.  For example, it would be improper for the Defendant to argue that the government settled on fraud charges because it could not prove economic espionage.  More colloquially, it would be improper to argue that the government wanted to catch a "spy" and settled on the Defendant.  At bottom, the lack of evidence to prove uncharged crimes, coupled with the government's exercise of prosecutorial discretion to charge crimes that can be proven beyond a reasonable doubt, is not a viable defense at trial. The purposeof presenting such an irrelevant and unfairly prejudicial argument to the jury is jury nullification.

    **C.**    **The Court Should Preclude Defendant from Referencing Sentencing and Other Consequences**

The Supreme Court has recognized that "a jury has no sentencing function," and "it should be admonished to reach its verdict without regard to what sentence might be imposed." *Shannon*

*v. United States*, 512 U.S. 573,579 (1994) (internal quotation marks omitted). "Information regarding the consequences of a verdict is therefore irrelevant to the jury's task." *Id; see also* Eighth Circuit Model Instr. 3.12 ("if the defendant is found guilty, the sentence to be imposed is my responsibility. You may not consider punishment in any way in deciding whether the [government] [prosecution] has proved its case beyond a reasonable doubt."). The Eight Circuit has further recognized that "…in the federal system the traditional role of the jury has been to decide questions of guilt or innocence, and not to determine the proper punishment a defendant should receive. *United States v. Goodface*, 835 F.2d 1233, 1237 (8th Cir.1987). Consequently, sentencing procedures or details regarding a defendant's possible punishment are irrelevant to the issues that a federal jury must decide. To inform a federal jury about a defendant's punishment would only introduce improper and confusing considerations before it. *United States v. Thomas*, 895 F.2d 1198, 1200 (8th Cir. 1990).

Impermissible references to punishment could be overt; for example, "The defendant is facing a prison term if convicted." But such references could also be subtler; for example, that "the Defendant is facing a lot of time," "the case has serious consequences for the Defendant," "the Defendant's liberty is at stake in this trial," "this employment dispute should have been resolved by human resources, not with the threat of jail time," or "your decision will have consequences for a long time to come." Once the jury hears anything about punishment or other consequences, the bell simply cannot be unrung or the damage neutralized by a curative instruction. Thus, the Court should preclude Defendant from referencing punishment in any way or otherwise inviting jury nullification as it relates to the consequences of a criminal conviction. Moreover, the Court should preclude Defendant from arguing or suggesting, whether directly or indirectly, that the jury should acquit him because he has already suffered in some way as a result

of the Superseding Indictment and the length of these proceedings, which have been ongoing for two years for reasons beyond the control of the government.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court (1) to prohibit the defendant from introducing his own statements through other witnesses or eliciting them on cross examination of government witnesses; (2) to prohibit reference to the government's failure to call equally available witnesses; (3) to exclude references to or evidence of bad character and conduct of government witnesses, apart from evidence offered to show untruthfulness; (4) to exclude evidence of defendant's general good conduct and character; (5) to exclude at trial any claim, questioning, or argument of selective prosecution including evidence or arguments related to FBI and DOJ initiatives; (6) to exclude testimony of undisclosed expert witnesses and any expert witnesses for which the defendant does not disclose witness summaries for; (7) to exclude references to the constitutionality of the Wolf Amendment or China Restriction, and (8) to preclude the defendant from offering improper defenses, and irrelevant and unfairly prejudicial arguments that invite jury nullification, during any phase of the trial, including jury selection, opening statements, examination of witnesses (including Defendant, if he elects to testify), and closing arguments.

Respectfully submitted,

DAVID CLAY FOWLKES
UNITED STATES ATTORNEY

*/s/ Clay Fowlkes*

Clay Fowlkes
United States Attorney
Arkansas Bar No. 2003191
414 Parker Avenue
Fort Smith, AR 72901

27

## <u>CERTIFICATE OF SERVICE</u>

     I, Clay Fowlkes, United States Attorney for the Western District of Arkansas, hereby certify that

on January 3, 2022 I electronically filed the foregoing with the Clerk of Court using the CM/ECF System,

which will send notification of such filing to the following:

     Drew Ledbetter, Courtney Cline, Kimberly Weber, and Stuart Cearley, attorneys for the Defendant.

*/s/ Clay Fowlkes*

Clay Fowlkes
United States Attorney